FILED
April 01, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004156223

PHILLIP GILLET, JR.
ATTORNEY AT LAW
1705 27TH STREET
BAKERSFIELD, CALIFORNIA 93301-2807
(661) 323-3200 ● FACSIMILE (661) 323-3078
Phillip W. Gillet, Jr., State Bar No. 214914

Attorney for Debtor(s)

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

In re

LYNDA MARIE BOUDREAUX

Debtor(s).

Case No.: 12-10813-B-13K
Chapter 13
Motion Control No.: None [sic]

DATE: April 4, 2012
TIME: 1:00 p.m.
PLACE: 1300 18th Street, Suite A
         Bakersfield, California
JUDGE: Hon. W. Richard Lee

**DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION.**

Secured creditor, GMAC Mortgage, LLC ("GMAC"), objects to the additional provisions sections 7.03, 7.04 and 7.05 of the Debtor's plan. The Debtor opposes that objection, however, does request that the court treat the objection as a motion to strike and if convinced by the court these provisions modify the rights of the first deed of trust, strike those and confirm the plan. The Debtor will address the arguments in the order presented, notwithstanding the fact that the notice is insufficient under LBR 9014-1(f)(1) and all documents fail to include a docket control number as required by LBR 9014-1(c).

I.  **SECTION 7.03 REJECTS ALL PROVISIONS IN EXECUTORY CONTRACTS REQUIRING ARBITRATION AND THE MOVING PARTY DOES NOT CITE TO ANY SUCH PROVISIONS IN ITS DEED, SO, IT CANNOT MODIFY SOMETHING THAT IS NOT THERE.**

---
1
OPPOSITION TO OBJECTION TO CONFIRMATION

Section 7.03 reads, "[a]ll arbitration and alternative dispute resolution clauses in any contract between the Debtor(s) and any creditors are rejected upon confirmation of this plan." Nothing cited in its argument point out any provision in the GMAC's deed of trust having an arbitration or alternative dispute resolution clause, so something that is absent cannot be changed in violation of section 1322. Furthermore, any contract not specifically assumed is rejected. This provision is included to make it crystal clear that the bankruptcy court has jurisdiction on any potential disputes among the parties.

## II. SECTION 524i IS NOT SELF-EXECUTING AND REQUIRES PROVISIONS IN THE PLAN TO PROTECT THE DEBTORS AND SECTION 7.04 PROVIDES A SPECIFIC MECHANISM FOR DEBTORS TO ENFORCE THOSE VIOLATIONS.

GMAC objects to section 7.04 of the plan on the ground that it impermissibly modifies the deed of trust in violation of 11 U.S.C. section 1322(b)(2). This is simply untrue. Similar arguments were shot down in *In re Monroy*, 650 F.3d 1300 (9th Cir. 2011).

To make use of § 524(i), the debtor's chapter 13 plan must contain precise language directing how payments are to be applied. In other words, § 524(i) is not self-executing and can only be invoked if the debtor proves that the creditor failed to "credit payments in the manner required by the plan." Section 1322(b)(2) bans the modification of the creditor's "rights". Nothing in the additional provisions modify the creditors' rights as defined in the Ninth Circuit. *See In re Monroy*, 650 F.3d 1300 (9th Cir. 2011).

For instance, nothing in the contract requires the creditor to file a proof of claim in the bankruptcy case to get paid. Yet they have done exactly that and do not argue that modifies its rights under the contract. The only thing that section 7.04 does is create a procedural mechanism, reporting requirements and a defined method of enforcing those rights. This sort of straight-forward approach should be welcomed by all to avoid future disputes as to what the plan required.

A. Section 524(i) Chapter 13 Plan Provisions

1. **Late fees, costs and assessment procedure: § 7.04(1)(2) through 5.**

Once the debtor's chapter 13 plan is confirmed in a case involving a long-term mortgage, the debtor's ongoing regular mortgage payments should be applied from the petition date based on the

mortgage contract terms and original loan amortization as if no default exists. *See In re Wines*, 239 B.R. 703 (Bankr. D.N.J. 1999); *In re Rathe*, 114 B.R. 253 (Bankr. D. Idaho 1990). All prebankruptcy arrearages are paid separately under the plan as a part of the mortgage servicer's allowed claim. *See Rake v. Wade*, 508 U.S. 464, 473 (1993) (noting that as authorized by § 1322(b)(5), mortgage creditor's claim is effectively "split ... into two separate claims - the underlying debt and the arrearages").

The problem is that mortgage creditors continue to treat timely payments received after the bankruptcy is filed as if they were late. This occurs because of the industry practice outside of bankruptcy of crediting payments received to the oldest outstanding installment due. While servicers attempt to manually override their automated systems, it is unrealistic to expect that this can be done regularly without error every month for the three to five years of the plan.

This means unauthorized fees are passed on to chapter 13 debtors. As payments are deemed late or insufficient, the automated systems treat payments as unapplied and divert them to suspense accounts, impose late fees and additional interest charges, and order property inspections and other default related services. *See In re Nosek*, 363 B.R. 643 (Bankr.D.Mass. 2007) (awarding $250,000 in actual damages to the debtor for her emotional distress and $500,000 in punitive damages under § 105(a) for servicer's violation of § 1322 by diverting plan payments to a suspense account). Legal fees are imposed on debtors for groundless stay relief motions, typically without disclosure to the debtor or court approval. This breakdown of the servicing system also results in debtors often not being notified of interest rate adjustments on adjustable rate mortgages or payment changes on escrow accounts. It is not uncommon for debtors who successfully complete their chapter 13 plans to receive a bill for thousands of dollars of previously undisclosed improper fees once they emerge from bankruptcy. For example, in *In re Dominique*, 368 B.R. 913 (Bankr.S.D.Fla. 2007), the servicer failed to send escrow account statements during the chapter 13 plan and just before plan completion, provided debtors with an escrow account review showing that a $6,397 escrow deficiency was owed. *See also In re Jones*, 366 B.R. 584 (Bankr.E.D.La. 2007) (mortgage creditor collected additional $24,450 in unlawful postpetition fees and interest charges at closing on court-approved refinancing).

Under § 524(i), a creditor's willful failure to properly credit payments received under a confirmed plan constitutes a violation of the injunction under § 524(a).[1]

Therefore, these provisions do no more than create a straight-forward mechanism to allow Debtors notice and opportunity required by the Due Process Clause of the U.S. Constitution to dispute any amounts owed. Specifically, provision (5) informs creditors that the consequence of their violation of any plan provision. Therefore, none of these provisions modify any rights of GMAC.

### 2. Effect of Cure: § 7.04(1)

Section 7.04(1) specifies how ongoing postpetition payments received by the mortgage creditor are to be applied under the terms of the plan. All the provisions under section 7.04(1)(a),(b) and (c) are related to application of the payment as directed by the plan. The overriding of its regular payment application is consistent with case law interpreting section 1322(b)(5). *See In re Jones*, 366 B.R. 584 (Bankr. E.D. La. 2007) (finding confirmation of plan providing for cure "recalibrates" amounts due of petition date). The lender may only charge late fees if the Debtor's payments are late under the plan. *See In re Perez*, 339 B.R. 385 (Bankr. S.D. Tex. 2006).

Under 7.04(1)(a), the lender is required to apply any monthly dividends on the pre-petition arrears, if any, and only to such arrears. This is exactly what the plan requires and this provision makes it crystal clear that this is required. Nothing in this provision modifies any right of the creditor under their contract.

A similar plan provision was approved in *In re Collins*, 2007 WL 2116416 (Bankr.E.D.Tenn. July 19, 2007), that required the mortgage creditor to "apply the post-petition monthly mortgage payments paid by the trustee or by the Debtors to the month in which each payment was designated to be made under the plan or directly by the Debtors...." Payments disbursed by the trustee to holders and/or servicers of mortgage claims shall be applied and credited only to the prepetition arrearages necessary to cure the default, which shall consist of amounts listed on the allowed proof of claim and authorized by the note and security agreement and applicable nonbankruptcy law. Holders and/or

---

[1] Section 524(i) provides a response to decisions which had questioned whether bankruptcy court authority exists to remedy a creditor's failure to credit postpetition payments properly. For example, it provides a remedy found missing in *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir. 2000).

1705 27TH STREET • BAKERSFIELD, CA 93301-2807 • (661) 323-3200 • FACSIMILE (661) 323-3078 • www.bakersfieldlaw.org

PHILLIP GILLET, JR.
ATTORNEY AT LAW

servicers of mortgage claims shall deem the prepetition arrearages as contractually current upon confirmation of the plan.

A mortgage account being cured in a chapter 13 is not fully reinstated until the prepetition arrearage has been paid. *In re Wilson,* 321 B.R. 222 (Bankr.N.D.Ill.2005). To effectuate a cure plan and avoid the imposition of late fees and other charges, however, it is critical that the mortgage creditor segregate payments being made on the prepetition arrearage and treat the arrearage amounts as if they are not in default. In rejecting an argument that such a plan provision was an impermissible modification under § 1322(b)(2), the court in *Collins* 2007 WL 2116416, *supra* at *14, stated: "[A] provision requiring [creditor] to 'deem' the prepetition arrearage amounts contractually 'current' as of confirmation is merely procedural and requires only that [creditor] update its accounting procedures to ensure that the Debtors' account is not subject to any additional charges associated with any prepetition default."

Another approach approved by the court in *In re Jones*, 2007 WL 2480494 (Bankr. E.D. La. Aug 29, 2007), focuses on the bifurcation required by a cure plan and specifies that the debtor's mortgage account shall be "divided into two new, internal administrative accounts." The first account consists of the amounts to be disbursed under the plan for the prepetition arrearage. The second account is the principal amount due on the petition date, and includes postpetition interest accrual and escrow expenses. *See In re McCormack*, 203 B.R. 521 (Bankr.D.N.H. 1996) (noting that escrow account must be "zeroed out" post-confirmation to exclude any preconfirmation amounts being paid under the plan). The plan would then provide that the "debtor's regular monthly note payments will be posted to this [second] account, reducing post-petition interest accrual, post-petition property and tax expenditures, and principal." *In re Jones* at *5.

### 3. Escrow and ARM Issues and Post-Petition Payment Changes: § 7.04(1)(d) & (e).

Section 7.04(1)(d) and (e) attempt to avoid the problem of debtors being surprised by large, catch-up bills after emerging from bankruptcy for amounts the creditor was entitled to based on escrow and interest rate changes but which were never disclosed. This does not modify the creditors rights but creates a reporting and noticing mechanism for the debtor.

Based on the Real Estate Settlement Procedures Act, this would mean performing an annual escrow analysis and notifying borrowers of any changes in escrow deposits and balances at least once per year within 30 days of the analysis. 12 U.S.C. § 2609. The creditor must also inform the debtor if there are insufficient funds in the escrow account. *See Chase Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309 (S.D. Fla. 2001); *In re Dominique*, 368 B.R. 913 (Bankr.S.D.Fla. 2007). For adjustable rate mortgages based on the Truth in Lending Act, it would require notification of payment amount changes at least 25 days before the due date for the new payment amount. A similar plan provision was approved by the court in *Collins*, 2007 WL 2116416, *supra* at *18, requiring notice not less than 60 days in advance of the effective date of any payment change. Compliance with RESPA and TILA during a chapter 13 case promotes successful plan completion and is consistent with § 1322(e), which states that the amount necessary to cure a default in a chapter 13 plan shall be determined in accordance with the "underlying agreement and applicable nonbankruptcy law." Applicable nonbankruptcy law includes federal non-Code statutes such as TILA and RESPA, and a determination of the cure amount includes consideration of ongoing postpetition payments based on § 1322(b)(5) and its reference to the "maintenance of payments while the case is pending."

### III.   SECTION 7.05 IS AUTHORIZED BY SECTION 1322(b)(8).

Nothing in section 7.05 would harm GMAC or change the terms of the loan. The Debtors could always pay the balance of the loan at any time. Nothing in section 7.05 would alter the contractual relationship. Specifically, 11 U.S.C. section 1328(b)(8) allows the Debtor to provide for payment of all or part of a claim from property of the estate or the debtor. *In re Anderson*, 21 B.R. 443 (Bankr. N.D. Ga. 1981). *In re Gillis*, 333 B.R. 1 (Bankr. W.D. Pa. 2005). The practice of putting a provision in the plan allowing such a practice was advocated by Judge McManus in *In re Kellar*, 329 B.R. 697, 700 (Bankr. E.D. Cal. 2005), where he wrote, "...if the debtor wants to sell or refinance property and use the proceeds to fund, in part, the plan, the debtor may provide for this in the original plan. See 11 U.S.C. §1322(a)(1) & (b)(8)." Therefore the provision allowing the Debtor to use the home as a source of funding should be allowed. *Id*.

////

It should be noted that the Debtor and the Trustee had entered into an agreement to have section 7.05 stricken from the plan because the trustee opposed it; however, the Debtor did not want her plan's confirmation held up solely for this provision. In light of this objection, the Debtor would like to court to rule on the applicability of this provision.

### IV. THE DEBTOR'S PLAN MEETS THE REQUIREMENTS OF 11 U.S.C. § 1325(a) AND SHOULD BE CONFIRMED.

Where a plan appears to satisfy requisites of 11 U.S.C. section 1325(a) and no evidence to contrary is presented, the court must confirm it. *In re Risser*, 22 B.R. 868 (Bankr. S.D. Cal. 1982). Even a plan that does not fulfill all the requirement of 11 U.S.C. section 1325, the court may still confirm the plan, as long as satisfactory provisions protecting the adversely affected interests are included. *In re Robertson*, 72 B.R. 2 (Bankr. D.C. Colo. 1985).

In this case, no evidence is presented that the plan does not comply with 11 U.S.C. section 1325. The court cannot, under 11 U.S.C. section 105 or any other authority, impose any requirements for confirmation that are not specifically listed in 11 U.S.C. section 1325(a). *Petro v. Mishler*, 276 F.3d 375 (7th Cir. (Ind.) 2002). Absent exceptional circumstances, to permit the court to exercise undefined authority to supplement statutory requirements would alter statute beyond what Congress intended, and transform finite list of requirements into a potentially infinite list. *Id*. Therefore, the court should overrule objection on this ground as well.

### V. CONCLUSION

Sections 7.03, 7.04 and 7.05 do not modify the rights of GMAC as defined under 11 U.S.C. 1322(b). This Debtor's plan complies with 11 U.S.C section 1325(a), as such, the plan should be confirmed.

Respectfully submitted,

DATED: April 1, 2012

By: /s/ Phillip Gillet

Phillip W. Gillet, Jr., Esq. (Bar No. 214914)
Attorney for Debtor(s)

PHILLIP GILLET, JR.
ATTORNEY AT LAW
1705 27TH STREET • BAKERSFIELD, CA 93301-2807 • (661) 323-3200 • FACSIMILE (661) 323-3078 • www.bakersfieldlaw.org