



**FILED**

**JUN 20 2012**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

In re ) Case No. 12-10813-B-13

Lynda Marie Boudreaux, )

        Debtor. )

_____)

### MEMORANDUM DECISION REGARDING GMAC'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Kristi M. Wells, Esq., appeared on behalf of GMAC Mortgage, LLC (successor by merger to GMAC Mortgage Corporation).

Phillip W. Gillet, Jr., Esq., appeared on behalf of the debtor, Lynda Marie Boudreaux.

Before the court is an objection by GMAC Mortgage, LLC, successor to GMAC Mortgage Corporation ("GMAC"), to confirmation of the chapter 13 plan (the "Plan") proposed by Lynda Marie Boudreaux ("Debtor"). GMAC holds the first priority mortgage against the Debtor's residence. GMAC contends that certain "additional provisions" added to the Plan impermissibly modify some of GMAC's contractual rights under the relevant mortgage instruments and therefore violate the anti-modification provision of § 1322(b)(2). Based thereon, GMAC asks that confirmation of the Plan be denied and for dismissal of the case (the "Objection").

For the reasons set forth below, GMAC's Objection will be overruled. However, some of the additional provisions to which GMAC objects to will be stricken from the Plan on other grounds. The Plan will be confirmed subject to this ruling.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c). The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 1325,[1] and General Order Nos. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

Debtor filed a chapter 13 petition on January 31, 2012. On Schedule D, Debtor listed GMAC as having a claim in the amount of $76,480 secured by her principal residence. GMAC holds a promissory note executed by Debtor in 2005 in which Debtor agreed to repay $84,251 over 30 years (the "Note"). The Note is secured by a first priority deed of trust against Debtor's principal residence (the "Deed of Trust").

Debtor used this District's form plan in proposing the Plan. GMAC's secured claim will be paid outside of the Plan and without the supervision and control of the chapter 13 trustee. The Plan places GMAC's claim in Class 4, which is intended for claims that "mature after the completion of [the] plan, are not in default, and are not modified by [the] plan." The Debtor will pay GMAC the regular monthly installments as they come due and otherwise comply with the terms of the Note and Deed of Trust. The Debtor was current on her mortgage payments

---

[1]Unless otherwise indicated, all bankruptcy, chapter, code section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

1   when she filed the petition. The Plan does not propose to cure any pre-petition

2   arrearages, and GMAC's proof of claim confirms that no arrearages were

3   outstanding on the petition date. Once the Plan is confirmed, the automatic stay will

4   terminate with regard to the Class 4 claims and GMAC will be free to enforce its

5   non-bankruptcy remedies under the Note and Deed of Trust in the event of a post-

6   petition default.

7   Under Section VII of the form plan, Debtor was permitted to include

8   additional provisions. Specifically, this section states, "As long as consistent with

9   the Bankruptcy Code, Debtor may propose additional or different plan provisions or

10  specify that any of the above provisions will not be applicable." Debtor exercised

11  this option by including several provisions, specifically sections 7.02, 7.03, 7.04,

12  7.05 and 7.06, which are attached as an addendum to the Plan (the "Addendum").

13  GMAC contends that three sections in the Addendum, specifically sections

14  7.03, 7.04, and 7.05, violate the provisions of the Bankruptcy Code. However, only

15  two provisions are relevant to this discussion.[2] They are 7.03 and 7.04 which read

16  as follows:

17          **7.03. Arbitration and alternative dispute resolution provisions.**
            All arbitration and alternative dispute resolution clauses in any
18          contract between the Debtor(s) and any creditors are rejected upon
            confirmation of this plan.
19
            **7.04. Application of 11 U.S.C. § 524(i).** The Debtor(s) specifically
20          invoke and intend for this plan provision to invoke and reserve for the
            Debtor(s) the provisions of 11 U.S.C. § 524(i).
21

22  _____

23          [2]Debtor's opposition brief states that she has agreed with the Trustee to delete section
24  7.05 of the Addendum from her Plan, leaving only sections 7.03 and 7.04 at issue. Deleted
    section 7.05 stated:
25
26          **7.05. Sale or refinance of real property.** The debtor(s) reserve the right
            to pay the balance of the base amount of this plan early by a lump sum
27          payment using the proceeds of the sell [sic] or refinance of their real
            property. This provision specifically modifies this plan's section 2.03
28          Commitment Period, which requires payment in full of all allowed claims
            to terminate the plan any sooner than the Commitment Period.

3

(1) **Confirmation duties imposed.**  Confirmation of the plan
shall impose a legal duty and obligation on the holders and
servicers of any claims secured by liens, mortgages and deeds
of trust on real property to:

> (a) Apply any monthly dividends on the pre-petition
> arrears, if any, and only to such arrearages;

> (b) deem the pre-petition arrearages as contractually
> cured upon confirmation of the plan precluding any late
> payment charges or other default-related fees and
> services based solely upon the pre-petition default(s);

> (c) apply the post-petition on-going mortgage payments,
> if any, paid by the trustee or the Debtor(s) in the months
> in which they were designated to be made under the
> plan, or directly by the Debtor(s), whether or not such
> payments are immediately applied to the loan or placed
> in some type of suspense, forbearance or some similar
> account;

> (d) notify the trustee, the Debtor(s) and the attorney for
> the Debtor(s) in writing of any changes in the interest
> rate for non-fixed rate or any adjustable rate mortgages
> and the effective date of any adjustment(s);

> (e) notify the trustee, the Debtor(s) and the attorney for
> the Debtor(s) in writing of any changes in property taxes
> or property insurance that would increase or decrease
> the escrow portion, if any, of the monthly mortgage
> payments and the effective date of any adjustment(s);

> (f) refrain from directly paying or attempting to pay any
> pre-petition tax obligation the Debtor(s) have included
> in their plan to be paid under the plan unless a motion to
> modify the plan is filed by the holder or servicer with
> notice to all required parties including, but not limited
> to, the trustee, the Debtor(s), and the attorney for the
> Debtor(s);

> (g) refrain from ever assessing, charging, imposing,
> billing or advancing any types of fee or charges
> (including, but not limited to, legal fees, broker price
> opinion fees, property inspection fees, property
> preservation fees, etc.) to the loan of the Debtor(s) either
> post-petition and pre-confirmation, post-confirmation
> and pre-discharge, or post-discharge unless those fees
> and charges have been approved after notice and an
> opportunity for hearing by the Bankruptcy Court upon
> the filing of a proper fee application under Bankruptcy
> Rule 2016;

(2) **Legal fees, costs and charges assessment procedure.**  The
Debtor(s), property of the Debtor(s) or of the estate is not liable
for a fee, cost or charge that arises from a security interest that

4

is secured by real property and that is incurred while the case is pending or as a result of the filing of the case except to the extent that the holder of such claim files with the court and serves on the Debtor(s), the Attorney for the Debtor(s), the Chapter 13 Trustee and the United States Trustee, a detailed and specific written notice of such fee (with supporting actual time and expense records), cost or charge before the earlier of:

> (a) 1 (one) year after the fee, cost or charge is incurred; or

> (b) 60 days before the closing of the case; and

> (c) such fee, cost or charge shall not be greater than the actual fee, cost or charge incurred and paid or agreed to be paid; and

> (d) such requested fee, cost or charge in no event shall be greater than the actual fee, cost or charge incurred and paid or agreed to be paid; and

> (e) is secured by property at the time of the petition that is greater than the amount of such claim, including such fee, cost or charge.

(3) **Right to Hearing on fees and charges.** The Debtor(s) shall have 30 days after service of any such notice under paragraph 2 above to file a written objection to the requested fee, cost or charge and move the court for a hearing. The Chapter 13 Trustee, United States Trustee shall also have standing to file an objection within the time period stated. If no timely objection is filed, then the court may consider the request on the record and enter any appropriate orders. If an objection is filed, then no order shall be entered until the matter is heard by the court and an appropriate order is entered.

(4) **Waiver of Fees, Charges or Costs.** The failure of a party to give the notice described in this section of this plan shall be deemed a waiver of any claims for fees, costs or charges described in this paragraph for all purposes and any attempt to collect such fees, costs or charges shall constitute a violation of this plan provision and a violation of section 362(a) if the conduct occurs during the case and of section 524(a)(2) if the violation occurs after the date of discharge. Such claims for violations shall be in addition to any other claims for violations of any other applicable non-bankruptcy law.

(5) **Violation of this plan provision.** Any violation of this provision shall be a willful violation of 11 U.S.C. § 524(i) in the event that the mortgage loan(s) is not serviced strictly in compliance with this provision of the plan and to the extent the improper servicing results in improper fees and charges of more than $50.00.

In response to GMAC's Objection, the Debtor argues that the additional plan provisions are consistent with the Bankruptcy Code and intended to fix common issues in chapter 13 plans. She asks that the Objection be overruled in its entirety. Alternatively, she requests that any additional provision found to be improper be stricken from the Plan to allow for confirmation.

**Analysis and Conclusions of Law.**

**The Application of § 1322.** Section 1322 of the Bankruptcy Code outlines what provisions must be and may be included in a chapter 13 plan. The mandatory provisions are found in § 1322(a) while § 1322(b) describes the discretionary provisions. Under § 1322(b)(2), often referred to as the "Anti-modification Clause," a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." However, "notwithstanding [§ 1322(b)(2)]," a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." § 1322(b)(5). Lastly, § 1322(b) permits a debtor's plan to "include any other appropriate provision not inconsistent with this title." § 1322(b)(11).

It is generally accepted that § 1322(b)(2), the power to modify a secured creditor's claim, has no application if the secured claim is not paid through the Plan with the supervision and control of the chapter 13 trustee. *In re Ford*, 179 B.R. 821, 824 (Bankr. E.D. Tex. 1995). Here, the Plan provides that the Debtor will make all of her mortgage payments to GMAC outside of the Plan. Indeed, by its own terms, Class 4 is only available for the treatment of claims that the Plan is not going to modify. Arguably, the entire Addendum can have no application to GMAC on this basis alone. However, GMAC did not raise that objection and the court will consider it waived.

GMAC argues, without specifics, that the provisions contained within

6

1   sections 7.03 and 7.04 of the Addendum generally violate the Anti-modification
2   Clause by modifying its rights under the Note and Deed of Trust.  GMAC contends
3   that the Addendum imposes additional duties and restrictions on GMAC that were
4   not originally contemplated by the parties in the Note and Deed of Trust.  Debtor
5   disagrees, relying primarily on a recent decision by the Ninth Circuit Bankruptcy
6   Appellate Panel ("BAP").

7        In *In re Herrera*, the BAP discussed what rights of a secured creditor holding
8   a mortgage on the debtor's principal residence could be modified by a chapter 13
9   plan.  422 B.R. 698 (9th Cir. BAP 2010), *aff'd mem. sub nom. In re Monroy*, 650
10  F.3d 1300 (9th Cir. 2011) (adopting BAP's analysis in *Herrera* in its entirety).
11  There, the BAP dealt with the same plan provisions in four cases that imposed
12  additional reporting duties on secured creditors; these duties included providing
13  monthly statements to the debtors, a comprehensive accounting upon the debtors'
14  request, and notice to the debtors of any changes or additional charges on monthly
15  mortgage payments.  *Id.* at 705–06.  The creditors whose claims were secured by the
16  debtors' principal residence argued that these additional provisions ignored their
17  contractual rights under their respective deeds of trust and notes, in violation of
18  § 1322(b)(2).  *Id.* at 715.

19       First, the BAP rejected the argument that the creditors possessed the "right"
20  not to have their reporting duties under the mortgage instruments modified.  *Id.* at
21  717–18.  Second, even if the creditors had such a right, the panel concluded that the
22  rights protected by the Anti-modification Clause were limited.  *Id.* at 718.  The BAP
23  observed that the "mortgage creditors' rights protected by § 1322(b)(2) all deal with
24  the terms of payment of, the security for, and the ability to enforce the mortgage
25  loan contracts."  *Id.* at 721.  And then "only those rights that were 'bargained for' by
26  the mortgage creditors are protected from modification by § 1322(b)(2)."  *Id.* at 720.
27  The plan provisions at issue in that case did not relate to payment terms nor were
28  they bargained for.  *Id.* at 718, 721.  Rather, the BAP found the additional

7

1    provisions requiring the enhanced reporting to be favorable, as they were "designed

2    to provide necessary information concerning the status of, and any additional

3    charges to, the debtors' mortgage loans during the term of their plan" and were

4    "justified by the need for chapter 13 debtors to emerge from bankruptcy with their

5    mortgage loans current." *Id.* at 723. Though the provisions imposed an additional

6    duty on creditors, "they [did] not modify any of the basic rights of [those] creditors."

7    *Id.* The BAP therefore concluded that the "inclusion of the enhanced reporting

8    requirements is authorized by § 1322(b)(11), and such provisions do not violate

9    § 1322(b)(2)." *Id.*

10    With *Herrera* in mind, the court turns to the additional provisions proposed

11    by Debtor.

12    **Section 7.03, the Anti-Arbitration Provision.** Beginning with the first

13    provision that GMAC objects to, section 7.03 of the Addendum provides for the

14    rejection of all arbitration and alternative dispute resolution clauses in any contract

15    between Debtor and her creditors. GMAC argues generally that this provision

16    modifies its contractual rights. However, GMAC cites no authority for the

17    proposition that it possesses a right to arbitration. The court rejects this argument.

18    For there to be a violation of the Anti-modification Clause, there must first

19    be a bargained for "right" in the mortgage instruments that suffers some impairment

20    or modification in the plan. Normally, one party to a contract will have the right to

21    arbitrate, and the other party a corresponding obligation to arbitrate, when both

22    parties have previously agreed to arbitration. *See Pac. Inv. Co. v. Townsend*, 58 Cal.

23    App. 3d 1, 9 (1976) ("[A] party cannot be required to arbitrate a dispute he has not

24    agreed to submit." (citations omitted)). Mutual assent to arbitration is typically

25    evidenced by an arbitration clause in a contract. *Cf.* CAL. CIV. PROC. CODE § 1281

26    ("A written agreement to submit to arbitration an existing controversy or a

27    controversy thereafter arising is valid, enforceable and irrevocable."). It follows

28    that where a creditor does not possess a particular right under the mortgage

8

instruments, a plan cannot modify that right and thus cannot violate § 1322(b)(2). *Cf.* BLACK'S LAW DICTIONARY 1095 (9th ed. 2009) (defining "modification" as a "change to *something*" or a "qualification or limitation of *something*" (emphasis added)).  In other words, a plan cannot modify something that does not exist.

As Debtor notes in her opposition, nothing in the Note or Deed of Trust can be interpreted as an arbitration clause or establishes GMAC's right to arbitrate. Even if an arbitration clause existed in the Note or Deed of Trust, it is unclear whether such clause would be enforceable before this court. *See In re Thorpe Insulation Co.*, 671 F.3d 1011, 1024 (9th Cir. 2012) (concluding that bankruptcy court has discretion not to enforce arbitration clause).  Without the right to arbitration, GMAC is unaffected by this additional plan provision.  Section 7.03 of the Addendum does not modify any of GMAC's rights and need not be stricken from the Plan.

**Payment Provisions for Secured Claims.**  Next, the court considers subsections 7.04(1)(a), (b), and (c) of the Addendum, which all deal with how a secured creditor must apply plan payments.  First, sections 7.04(1)(a) and (b) relate to the curing of pre-petition arrears, providing that a creditor must apply any cure payments only to the arrears and that the creditor must not impose late fees unless the cure payments are late or in default under the Plan.  But because no pre-petition arrears are owed to GMAC and no arrearage payments will be made through the Plan, these two additional provisions have no application to GMAC.  Thus, sections 7.04(1)(a) and (b) cannot be seen as affecting any of GMAC's contractual rights.

As to section 7.04(1)(c), this additional provision requires GMAC to apply each post-petition mortgage payment to the month for which the payment is designated by the Debtor when the payment is made.  The court must assume here that the Debtor will make her mortgage payments when they come due and designate each monthly payment to be applied in order of the months in which they come due.  If she skips a month, the Debtor will be in default of the mortgage and

9

1  face the possibility and cost of imminent foreclosure. This provision is not
2  inconsistent with the second section of the Deed of Trust entitled "Application of
3  Payments or Proceeds" which provides, "payments shall be applied to each Periodic
4  Payment in the order in which it became due." Section 7.04(c) will have no
5  practical application unless the Debtor is in default. GMAC has not explained how
6  the application of monthly payments rises to the level of a "bargained for right."
7  The court is not persuaded that any of GMAC's "rights" under the Note or Deed of
8  Trust have been modified by this additional provision.

9  **Notice Provisions Regarding Changes in Payment.** Sections 7.04(1)(d)
10  and (e) of the Addendum are notice provisions, requiring that a creditor give written
11  notice to the debtor whenever there is a change in the scheduled payment amount as
12  a result of a change in the interest rate, property taxes, or property insurance. These
13  provisions are no different than the provisions considered by the BAP in *Herrera*.
14  As discussed above, the BAP concluded that a plan's enhanced reporting
15  requirements, including the notice for any change in payment amount, were
16  authorized by § 1322(b)(11). *Herrera*, 422 B.R. at 723.

17  Even though these notice provisions in the Plan do not run afoul of the Anti-
18  modification Clause, they are problematic for another reason. Section 1322(b)(11)
19  only allows additional plan provisions that are "not inconsistent with [the
20  Bankruptcy Code]." By extension, a plan cannot propose a provision that is
21  inconsistent with or duplicative of the Federal Rules of Bankruptcy Procedure. *Cf.*
22  § 105(a) (providing that the court may "sua sponte, tak[e] any action or mak[e] any
23  determination necessary or appropriate to *enforce or implement* court orders or
24  *rules*" (emphasis added)); *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct.
25  1367, 1381 (2010) (concluding that the Code required bankruptcy court to direct
26  debtor to conform plan to applicable provisions of the Code where debtor's plan
27  proposed to discharge student loan debt without requisite adversary proceeding and
28  finding of undue hardship).

10

1    Although the court recognizes the potential issues arising from a debtor's

2    lack of notice for changes in payment, sections 7.04(1)(d) and (e) are unnecessary

3    and inappropriate in light of the provisions in Rule 3002.1.[3] Rule 3002.1 is intended

4    to apply to claims in a chapter 13 cases "that are (1) secured by a security interest in

5    the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the

6    Code in the debtor's plan." FED. R. BANKR. P. 3002.1(a). Here, GMAC's claim is

7    secured by Debtor's principal residence and the Plan calls for "maintenance of

8    payments while the case is pending" beyond the term of the Plan. Rule 3002.1

9    therefore applies to GMAC even though its claim is being paid outside of the Plan.

10   Rule 3002.1 then goes on to provide,

11   The holder of the claim shall file and serve on the debtor, debtor's
     counsel, and the trustee a notice of **any change in the payment**

12   **amount**, including any change that results from an interest rate or
     escrow account adjustment, no later than 21 days before a payment in

13   the new amount is due. (Emphasis added.)

14   FED. R. BANKR. P. 3002.1(b). This Rule applies to "any change in the payment

15   amount," which would include any of the changes outlined in sections 7.04(1)(d)

16   and (e). Rule 3002.1(b) is even more specific than the additional provisions, by

17   requiring that notice be given 21 days before the new payment amount is due.

18   Additional provisions 7.04(1)(d) and (e) are therefore unnecessary and inappropriate

19   and will be stricken from the Plan.

20   **Tax Payment Provision.** Next, the court considers section 7.04(1)(f) of the

21   Addendum, which requires that a secured creditor refrain from paying pre-petition

22   taxes. This provision only applies to "any pre-petition tax obligation [Debtor has]

23   included in [his] plan to be paid under the plan." Because no pre-petition tax

24   obligations affecting the Debtor's residence are provided for in the Plan, this

25   additional provision is inapplicable to GMAC and does not modify any of its rights

26   under the Note or Deed of Trust.

27

28   [3] Rule 3002.1 was adopted April 26, 2011 and became effective December 2, 2011.
     Debtor's bankruptcy petition was filed in 2012, so the Rule is applicable in this case.

For any taxes that become due post-petition, or are not included in the Plan, GMAC will maintain its rights originally set out in the mortgage instruments. Under Section 3 of the Deed of Trust, Debtor is obligated to pay "taxes and assessments and other items which can attain priority over [the Deed of Trust] as a lien or encumbrance on the Property." Then, in Section 9, the Deed of Trust provides,

> If . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

This right is unaffected by section 7.04(1)(f) of the Addendum, and nothing in the Plan will prevent GMAC from protecting its lien from the non-payment of post-confirmation taxes.

**Additional Fee or Charge Provisions.** Sections 7.04(1)(g) and 704(2), (3), and (4) of the Addendum provide a procedural mechanism that a secured creditor must follow before imposing and recovering additional fees and charges against the debtor or her property. Debtor argues that these additional provisions were incorporated into the Plan to prevent her from being blindsided by a bill from GMAC for undisclosed additional fees and charges after completing her Plan. Though Debtor's concerns are warranted, these additional plan provisions are again redundant and unnecessary in light of the protections set forth in Rule 3002.1.

First, section 7.04(1)(g) would require a creditor to file a fee application under Rule 2016 before recovering additional fees and charges against the debtor. Section 7.04(2) is essentially an extension of section 7.04(1)(g), which requires that the creditor give notice of any additional fees or charges. The major difference between the two is that a creditor must serve a "detailed and specific written notice" of the requested fees under section 7.04(2) while a creditor must file an "application under Bankruptcy Rule 2016" under section 7.04(1)(g).

1    Disregarding the potential overlap and inconsistency between sections

2    7.04(1)(g) and 7.04(2), the plan provisions are unnecessary because Rule 3002.1(c)

3    already addresses this concern.  The Rule provides,

4        The holder of the claim shall file and serve on the debtor, debtor's
         counsel, and the trustee a notice itemizing all fees, expenses, or
5        charges (1) that were incurred in connection with the claim after the
         bankruptcy case was filed, and (2) that the holder asserts are
6        recoverable against the debtor or against the debtor's principal
         residence.  The notice shall be served within 180 days after the date on
7        which the fees, expenses, or charges are incurred.

8    FED. R. BANKR. P. 3002.1(c).  Not only does Rule 3002.1(c) preempt sections

9    7.04(1)(g) and (2), but this Rule is more clear and precise than these proposed plan

10   provisions and it prescribes a nationally accepted procedure for dealing with the

11   issue of additional fees and costs charged to a mortgage.  Thus, they should be

12   stricken from the Plan.

13       Next, section 7.04(3) of the Addendum establishes a mechanism for the

14   debtor, the trustee, and the U.S. Trustee to object to the creditor's additional fees or

15   charges, which includes the right to a hearing before this court.  However, the

16   protections provided by the plan provisions are already encompassed within Rule

17   3002.1(e).  This Rule states the following:

18       On motion of the debtor or trustee filed within one year after service
         of a notice under [Rule 3002.1(c)], the court shall, after notice and
19       hearing, determine whether payment of any claimed fee, expense, or
         charge is required by the underlying agreement and applicable
20       nonbankruptcy law to cure a default or maintain payments in
         accordance with § 1322(b)(5) of the Code.

21

22   FED. R. BANKR. P. 3002.1(e).  Section 7.04(3) is therefore unnecessary in the Plan

23   and should be stricken from it.

24       Section 7.04(4), the last of these provisions dealing with additional fees or

25   charges, addresses the effect on the secured creditor and its claim for failing to

26   provide the requisite notice to the debtor.  Specifically, this additional provision

27   deems the failure to provide notice of additional fees to be a waiver of such fees.

28   Clearly, this provision materially affects one of GMAC's substantive rights.  Under

13

section 14 of the Deed of Trust, GMAC is entitled to charge and recover additional fees from Debtor. However, the court again finds this provision to be inappropriate and unnecessary because Rule 3002.1(i) already provides a procedural and evidentiary remedy for this problem:

> (i) **Failure to Notify.** If the holder of a claim fails to provide any information as required by [Rule 3002.1(b) or (c)], the court may, after notice and hearing, take . . . the following action[ ]:
>
>> (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>>
>> (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

FED. R. BANKR. P. 3002.1(i).

Section 7.04(4) should be stricken from the Plan.

**Willful Violation Provision.** Finally, the court considers the propriety of section 7.04(5) of the Addendum which states, "*Any* violation of this provision shall be a willful violation of 11 U.S.C. § 524(i) in the event that the mortgage loan(s) is not serviced strictly in compliance with this provision of the plan." This plan provision tries to mandate that a creditor's failure to comply with any provisions of section 7.04, whether such failure resulted from a good faith mistake or not, shall automatically constitute a sanctionable violation under § 524(i) which provides:

> The *willful* failure of a creditor to credit payments received under a plan confirmed under this title . . . shall constitute a violation of [the discharge injunction under § 524(a)(2)] if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

§ 524(i) (emphasis added).

A creditor's violation of the discharge injunction under § 524(a)(2) may justify the imposition of civil contempt sanctions, the only remedy available for a discharge violation. *See Walls v. Wells Fargo Bank*, 276 F.3d 502, 509–10 (9th Cir. 2002). With section 7.04(5), Debtor is attempting to mandate the court's use of its civil contempt authority for all violations of section 7.04 whether the violative

14

conduct was willful or not. Such a provision is too broad and is thus inconsistent with the provisions of the Code.

The court may properly exercise its civil contempt authority for violation of a discharge injunction only when the offending creditor has acted willfully, meaning the creditor knew that the discharge injunction was applicable and it intended the actions which violated the injunction. *See Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002) (citations omitted). When a creditor's violative actions are unintentional or are performed without the requisite knowledge, there can be no finding of willfulness and thus no sanctions. Because § 524(i) already requires that a creditor's failure to properly credit payments be willful in order to constitute a violation, it follows that civil contempt sanctions would be appropriate for any § 524(i) violations. However, section 7.04(5) does not require actual willfulness on the part of the creditor for there to be a violation of § 524(i). Without any qualifications or limitations, section 7.04(5) simply decrees by fiat that a creditor who makes a good faith mistake in improperly crediting payments has violated § 524(i) and may be subject to sanctions. Section 704(5) is inconsistent with how civil contempt sanctions are imposed and should be stricken from the Plan.

**Conclusion.**

Based on the foregoing, GMAC's Objection and request to deny confirmation of the Plan and dismiss the case on the grounds that the additional provisions violate § 1322(b)(2) will be overruled. The court is not persuaded that the power to modify a secured claim under § 1322(b)(2) applies to GMAC's Class 4 claim since the claim is being paid outside of the Plan. However, as noted above, some of the additional provisions are inconsistent with the Bankruptcy Code, or are already covered by Rule 3002.1 and will be stricken from the Plan on that basis. The remaining additional provisions do not materially modify GMAC's bargained for rights under its Note and Deed of Trust. Accordingly, sections 7.04(1)(d), (e) &

15

(g) and 7.04(2), (3), (4) and (5) of the additional provisions will be stricken from the Plan. The Plan will otherwise be confirmed. The Debtor shall submit to the chapter 13 trustee a confirmation order that is consistent herewith.

Dated: June _____, 2012

_____
W. Richard Lee
United States Bankruptcy Judge

16